ELMORE L. POTTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33878. Promulgated December 20, 1929.

*F. P. Fleming, Esq.*, and *W. J. Fraser, C. P. A.*, for the petitioner.
*J. L. Backstrom, Esq.*, for the respondent.

TRUSSELL: Under the first issue we have for consideration the character of a loss sustained in 1923 by petitioner in the sale of certain stock, the amount of the loss carried forward to 1924 and 1925 by petitioner being shown and the correctness of this amount and the fact that it is 1923 loss allowed by respondent for that year not being in issue. The sole question on this issue is whether the loss sustained in 1923 was a net loss subject to be carried forward and deducted over the two succeeding taxable years 1924 and 1925. In determining this question of law the applicable provision is contained in section 206 (f) of the Revenue Act of 1924, which provides as follows:

If for the taxable year 1923 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1921, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

In this connection section 204 (a) of the Revenue Act of 1921 is material in providing:

That as used in this section the term "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business) * * *.

The net loss provision of the statute therefore is limited to losses resulting from the " operation of a business regularly carried on by the taxpayer." It is the contention of the respondent that the loss did not result from the operation of a business of the petitioner.

What constitutes a business within the purview of the statute has been previously considered a number of times. Perhaps the most satisfactory definitions are those cited in *Harvey H. Ostenberg* 17 B. T. A. 738, as follows:

" Business " is a very comprehensive term and embraces everything about which a person can be employed, Black's Law Dict. citing *People ex rel Hoyt* v. *Tax Comrs.*, 23 N. Y. 242, 244. That which occupies the time, attention and labor of men for the purpose of a livelihood or profit. Bouvier's Law Dict. p. 273. Approved in *Flint* v. *Stone and Tracy*, 220 U. S. 107; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503.

See, also, *Ignaz Schwinn*, 9 B. T. A. 1304.

It is not thought subject to question that the loss sustained by petitioner in 1923 was a business loss, but this fact does not in itself show it to be a net loss subject to be carried forward and deducted over the next two succeeding years, for such loss, under section 204

(a) above quoted, must be one incurred in business "regularly carried on by the taxpayer." In construing this provision of the Act we have consistently followed the rule originally laid down by us in *J. J. Harrington*, 1 B. T. A. 11, that the business in which the loss was incurred must have been carried on to the extent of constituting a vocation.

So the question here presented is whether the facts proven show petitioner's loss in business in respect to the Clarendon Hotel was an incident in his following of a regular vocation, or was a loss sustained in an isolated business transaction.

On this question the record shows that petitioner was an expert in hotel financing, management and operation. For nearly 30 years prior to the year in question his time had been occupied in actively managing and operating various hotels in which he held an interest either as stockholder or bondholder. In these enterprises he was not a mere investor, but made the business in which his funds were invested the subject of his personal and individual attention and effort, receiving for this a salary in addition to the increase in his return from the investment, due to his knowledge of the business and efficient operation of the various enterprises. The picture presented shows clearly that the investment and the personal management were closely related, each dependent on the other, the two combined producing the income received by this taxpayer, and that the knowledge, experience, work and investment were all in respect to one definite and distinct line of business, namely, hotel organization and operation. In this line of business he was in the year 1923 employing jointly his time and his capital, as he had done continuously for many years. During all this period this had been his sole business.

In this connection it is noted that the circumstances of the loss in question, in themselves, illustrate the personal character of the work and investment of petitioner, and the fact that it was not limited to that of a mere stockholder in the corporate enterprise. The Clarendon Hotel had formerly been owned and operated by petitioner and after its destruction by fire he organized a corporation and rebuilt it. In this corporation he owned $100,000 of the $250,000 issued preferred stock and $275,000 of the $300,000 issued common stock and actively operated the hotel as managing director. When additional funds were necessary, petitioner secured a loan of $150,000 to the corporation, for which it gave its note secured by a mortgage and for which petitioner gave *individually* to the lender $150,000 of his common stock.

Subsequently, as a result of disputes and litigation, he withdrew from the enterprise, sustaining the loss in question in so doing.

As we see it, this petitioner is shown to have been carrying on for many years a definite and distinct business constituting a regular vocation, in which he employed jointly and consistently both his capital and his professional knowledge of hotel operation and management; from the business consisting of the use of these together, his income was produced, and in the carrying on of this business he incurred the loss in question during 1923. *Lawrence J. Montgomery,* 17 B. T. A. 1308; *E. M. Elliott,* 15 B. T. A. 494; *Oscar K. Eysenbach,* 10 B. T. A. 716; *Charles H. Van Etten,* 8 B. T. A. 611; *Philip Kobbe Co.,* 4 B. T. A. 663. It follows that the net loss thus occasioned should be carried forward successively to the years 1924 and 1925.

The second issue is a question of the deductibility of expenses incurred by the petitioner in traveling to San Diego, Calif., where he had large interests in an hotel and office building which afforded the main source of income to him during the taxable years. After careful consideration of the testimony of the petitioner we are satisfied that there was a business necessity in his trips to San Diego in preserving and safeguarding his interests and property. It naturally follows that the expense is properly allowable as a deduction from income. *Harold Mortenson,* 3 B. T. A. 300· *Fred Dennett,* 7 B. T. A. 1173.

The third issue relates to attorney fees and expenses of which there is practically no evidence before us save that they were incurred in the defense of a suit against a corporation in which the petitioner was interested. In the deficiency letter the respondent disallowed them for the reason that he considered them to be involved in the 1923 loss. We leave the situation as we find it.

*Judgment will be entered pursuant to Rule 50.*