BURROWS McNEIR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68480. Promulgated April 17, 1934.

*Frank J. Albus, Esq.*, for the petitioner.
*Richard W. Wilson, Esq.*, and *Dale H. Flagg, Esq.*, for the respondent.

#### OPINION.

ARUNDELL: This proceeding involves deficiencies in income tax determined by the respondent for the years 1929 and 1930 in the respective amounts of $2,736.10 and $186.27. Tax assessed for 1929 in the amount of $36.02 is also disputed, making a total of $2,772.12 in controversy for that year. The controversy for the year 1930 was settled at the hearing by the concession of counsel for respondent of a deductible loss sustained by petitioner in the operation of a farm and the petitioner's abandonment of a claimed bad debt deduction. Decision of no deficiency will be entered for the year 1930.

The remaining question is whether a loss sustained in 1928 was a statutory net loss so that petitioner may carry it forward and reduce 1929 income. The 1928 loss was occasioned by the worthlessness of stock of the Alliance Realty Co. Respondent concedes worthlessness in 1928, resulting in a deductible loss of $60,000 and a consequent net loss for the year in the amount of $30,340.69.

Petitioner's first acquisition of Alliance Realty Co. stock was in 1925. He loaned money to an acquaintance to enable him "to complete a deal for a hotel" in Florida. He shortly learned that negotiations had not progressed as far as he had been led to believe

and endeavored to get his money back. He was unable to obtain repayment and was persuaded to advance additional funds. The advances so made amounted to about $40,000 and for them he received stock, $20,000 common and $20,000 preferred, some of which he sold. He later traded a boat which had cost him about $20,000 for $10,000 common and $10,000 preferred Alliance stock. Still later he exchanged real estate for additional stock in the amount of $40,000. The Alliance Realty Co. acquired and operated the Monterey Hotel. The operation was not successful and the property was taken over by the bondholders in 1928. From the time of construction in 1925 until its surrender to the bondholders in 1928 petitioner had an office in the hotel and supervised its operation.

For a number of years petitioner has traded various kinds of property. He has traded cattle, sheep, gasoline engines, automobiles, boats, typewriters, pumps, and electric motors; at one time he traded an airplane for stock of a laundry company; he did some trading in real estate. He made his trades at irregular intervals, at times several in one day and at others not more than one a week. He is a machinist by trade, and his garage in Florida was equipped with a lathe and drill press and other tools. He kept a supply of pumps in the garage. Petitioner received income from a trust fund and from securities other than the Alliance Realty stock.

Petitioner's argument is that the Alliance Realty Co. stock was acquired in trades for other property; that his business was that of trading generally as distinguished from trading in securities; that his trades occurred with sufficient regularity and required sufficient time to constitute a business regularly carried on. He does not claim to have dealt in securities sufficiently to make that a trade or business regularly carried on within the meaning of section 117 of the Revenue Act of 1928. Neither does he claim that the loss was a net loss by reason of his being a heavy stockholder in the hotel company and his business was that of supervising the operation of the hotel property. Cf. *Burnet* v. *Clark*, 287 U.S. 410, where a net loss deduction was denied to an individual managing a corporation and owning a majority of the stock, the loss growing out of a sale of the stock and payment of notes of the corporation endorsed by the taxpayer.

Assuming for the moment that trading property for other property was petitioner's regular trade or business, it does not appear that the stock which became worthless was all acquired in a trade. When he first became involved in the hotel deal he put in cash to the extent of $40,000, for which he received stock. He testified that he sold some of the first acquired stock, but does not say how much. Apparently the sales were not in any substantial amount, as he

owned $75,000 or $80,000 worth in 1928. The acquisition of stock for cash obviously was not an acquisition in a trade or an exchange.

But passing this, we have the question of whether petitioner's activities as a trader amounted to the conduct of a trade or business regularly carried on. That he had a penchant for swapping things is undeniable on the record, his testimony being that he started trading in early boyhood and has continued it ever since. It does not appear, however, that his trading was conducted with a view to making a livelihood or profit. The intent of reaping a profit—if not a livelihood—is an essential element in bringing a transaction within the accepted definitions of trade or business. See *Elmore L. Potter*, 18 B.T.A. 549, and cases cited. In *Harriet P. Schermerhorn*, 26 B.T.A. 1031, the taxpayer was not dependent on profit from trading for her livelihood, but, as said in the opinion, " it is not denied that petitioner carried on these activities in the hope of profit." Fondness for a particular kind of enterprise or pleasure derived from engaging in an activity does not prevent classification as a trade or business, see *Wilson* v. *Eisner*, 282 Fed. 38, where the business was that of breeding and raising horses, but in such cases " intention is important," *Commissioner* v. *Marshall Field*, 67 Fed. (2d) 876. In the latter case the court concluded from the evidence that the taxpayer " embarked in these enterprises with the expectation of making profits; at least he did so with an earnest and honest intention." In the present case we are unable to find from the evidence that petitioner engaged in the trading of property with any intention of making a profit, and so we are unable to conclude that his trading amounted to a trade or business within the meaning of the taxing statute.

> *Decision will be entered for the respondent for the year 1929, and decision of no deficiency will be entered for the year 1930.*