WALLACE v. COMMISSIONER OF INTERNAL REVENUE (two cases).

Nos. 10547, 10548.

Circuit Court of Appeals, Ninth Circuit.

July 17, 1944.

408

W. R. Wallace, Jr., of San Francisco, Cal., for petitioner Ina Claire Wallace.

W. R. Ray, of San Francisco, Cal., for petitioner W. R. Wallace, Jr.

Williamson & Wallace, of San Francisco, Cal., for petitioners.

Samuel O. Clark, Jr., Asst. U. S. Atty. Gen., and Sewall Key, Bernard Chertcoff, Robert N. Anderson, and Harry Baum, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR and GARRECHT, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

These are two petitions for review of decisions of the Tax Court which sustained rulings of the respondent-commissioner disallowing deductions claimed by petitioners, respectively, and in consequence adjudging deficiencies against the respective petitioners in their income taxes for the year 1939.

The petitions have been consolidated and heard upon a single printed record and this opinion will suffice to determine both reviews.

The total amount of deductions in controversy, one-half of which has been claimed by each of the petitioners on his or her separate federal income tax return for the calendar year 1939, is not in dispute, nor is any question raised as to the right of petitioners to treat combined earnings after their marriage on March 16, 1939, as community income and to file separate returns in which all proper and allowable community deductions may be separately taken by the spouses.

The contention of the commissioner, sustained by the tax court, relates solely to the household expenses of Mrs. Wallace incurred at Beverly Hills during the period from March 16, 1939, to September 15, 1939, the time when Mrs. Wallace was employed by Loew's, Inc., under the terms of a contract for her personal services as an actress.

The decisions under review, while determining under the facts that petitioners' domicile or legal residence after their marriage on March 16, 1939, was San Francisco, nevertheless substantially held that Mrs. Wallace was not "away from home in the pursuit of a trade or business" during the time that she was fulfilling her professional engagements as an actress in Hollywood from March 16, 1939 to September 15, 1939, under contract with a motion picture company. The tax court concluded that "home" as the term is used in Section 23(a) (1) [1] of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1), means the taxpayer Mrs. Wallace's place of business, employment, or the post or station at which she was employed and that Hollywood being such place she was not away from "home" in the pursuit of business and consequently the claimed deductions for her household expenses from March 16 to September 15, 1939 were not allowable.

The question for decision is therefore aptly stated in the brief of respondent, as follows: "Whether taxpayers, a husband and wife, domiciled in San Francisco, California, are entitled under section 23(a) (1) of the Internal Revenue Code to deduct as traveling expenses 'while away from home' amounts expended by the wife for food,

---

[1] "Sec. 23. Deductions from gross income. * * *

"(a) Expenses. (1) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

rent and similar living expenses at Hollywood, California, while she was employed there during 1939 as a motion picture actress?"

From the memorandum opinion of the Tax Court which embodies the only findings of fact in the record and from the undisputed evidence in the record before us the following pertinent factual situation is disclosed:

Petitioners are husband and wife and were married March 16, 1939. Petitioner Ina Claire Wallace is a well-known actress whose professional activities have been extensive and versatile in many plays on the "legitimate" stage and in motion pictures, both in England and in America. Petitioner William R. Wallace, Jr., is a lawyer and has lived and practiced his profession in San Francisco since the year 1927.

Upon their marriage the petitioners mutually agreed to reside at San Francisco and the domicile or legal residence of both petitioners after their marriage has been in San Francisco. Mrs. Wallace came to California from her home in New York City in November, 1938, for the purpose of professionally participating in the making of a motion picture under a written contract between herself and Loew's, Inc., dated November 18, 1938. This agreement engaged her services as a motion picture actress and her availability in performance thereof in Los Angeles at all required times over a forty-week period beginning in November, 1938, and ending in September, 1939, at compensation to be based upon her normal theatrical season's earnings and to be payable at the rate of $2,000 per week. Prior to leaving New York to fill the engagement with Loew's, Inc., Mrs. Wallace had been residing in a hotel and had also at about the same time taken a lease for three years on a completely furnished apartment in New York City which she was getting ready to occupy when she was urged by telephone from the West Coast to accept the Loew's, Inc., engagement in California. When she left New York she definitely intended to return there and live in the furnished apartment which she had reserved at the completion of her contract with Loew's, Inc. This she never did, as her marriage completely altered her plans. Nevertheless, she kept the New York apartment for the full three-year period, subletting it for a portion of the term, which continued through the entire taxable year of 1939, and into 1942. Upon her arrival in Los Angeles to perform under the contract with Loew's, Inc., petitioner lived at a hotel for a few weeks, then moved into a house upon which she had taken a lease for three months, upon the expiration of which she moved into another residence in Beverly Hills, which before she had decided to marry Mr. Wallace she had agreed to rent from March 15, 1939 to September 15, 1939, the approximate date when it was anticipated that the motion picture in which she was to appear and which professional engagement brought her to California would be completed.

The commencement of the motion picture in which petitioner was specially engaged to appear under the contract with Loew's, Inc., was delayed until about May 1, 1939. Although the understanding was for her appearance in the specific belated picture, nevertheless, being under the contract from November, 1938, she agreed to and did work in another cinema for Loew's, Inc., for five or six weeks immediately after her arrival in California. During this period she resided in a hotel and in a house which she had rented for a definite period in Beverly Hills, California.

After their marriage in Salt Lake City, Utah, Mr. and Mrs. Wallace went to San Francisco, which city they had mutually decided to make their home, and, after a sojourn there at a hotel, they mutually established their permanent living quarters in San Francisco. Mrs. Wallace remained with her husband until about May 1, 1939, when she returned under her contract to Los Angeles to work in the picture which had been just started. She remained there until about July 1st, returning to her husband in San Francisco where she stayed most of the month of July, then again going to Los Angeles to continue her professional commitment with Loew's, Inc., and remaining until the motion picture was finished about the first of September. She then returned to her domicile and residence in San Francisco and has continued to permanently reside there with her husband ever since, although petitioners have both been outside of the State of California on professional pursuits or business, sometimes together and sometimes separately.

Upon Mrs. Wallace's return to her home in San Francisco in May, and again in July, during breaks in her motion picture engagement, she and her husband read and studied plays and discussed them with authors and actors' agents, received her busi-

ness mail, telephone calls and telegrams connected with her business and professional activities, and again after her return home on completion of her Hollywood engagement in September Mr. and Mrs. Wallace continued for the rest of the year to read and review together many stage plays that had been submitted for their approval, to consider and reject requests to "do" other motion pictures and to negotiate with persons prospective to arranging with theatrical agents and managers for a play featuring Mrs. Wallace as distinguished from a motion picture for the current theatrical season.

■ As the decision of the Tax Court inherently involves the interpretation of terms used in a statute it presents reviewable matter in the Circuit Court of Appeals. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239.

■ Our first inquiry is to ascertain whether there is any indication of an intention by Congress to employ the expression "away from home in the pursuit of a trade or business" in the legislation under consideration other than according to the ordinary and usual meaning of the words used. The plain, obvious and rational meaning of a tax statute is always to be preferred to any narrow or hidden sense that nothing but the exigency of a hard case justifies,[2] and while the meaning to be given to terms used will be determined from the character of their use by the legislature in the statute under consideration, words in common use should not be distorted by administrative or judicial interpretation. This is, in effect, what has been done by the Commissioner and sustained by the Tax Court.

We have found nothing in section 23(a) (1) of the Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code § 23(a) (1) or in the earlier legislation from which this code provision is derived [3] which denotes any intent by Congress to attribute to the word "home" as therein used any unusual or novel meaning.[4]

■ Therefore the Tax Court in its effort to differentiate between the conceded "domicile" and "legal residence" of both petitioners after their marriage and their

"home" at such times, has, we think, invaded the domain of Congress in construing the term "home" as used in the statute under consideration as meaning "the taxpayer's place of business, employment or the post or station at which he is employed." Had Congress intended that the word "home" should not be understood and applied in its ordinary sense but rather as meaning the locale of employment of the taxpayer, it would have used a more appropriate term to express such an intent.

■ A home in relation to the place of abode is a dwelling place of a person, distinguished from other dwelling places of that person by the intimacy of the relation between the person and the place.[5]

■ If the elements of this characterization of a home are applied to the habitations of the petitioners, no place, under the facts found by the Tax Court, other than New York City and San Francisco can be classified as the "home" of either of the petitioners during the calendar year 1939. Both the Commissioner and the Tax Court found that petitioner William R. Wallace, Jr., at all applicable times had his home, his residence and domicile in San Francisco, but despite the undisputed evidence of petitioner Ina Claire Wallace's retention of the living apartment in New York City and her definite intention up to the time of her marriage of returning there upon completion of her professional engagement with Loew's, Inc., and notwithstanding the uncontroverted agreement of petitioners to establish their marital home in San Francisco, and the uncontradicted evidence that petitioners lived in such home all times in the taxable year after their marriage when Mrs. Wallace was not temporarily staying in Beverly Hills and vicinity to complete the motion picture in which she was acting, the Tax Court concluded that Mrs. Wallace's home during the time she was acting in the cinema was in the vicinity of Hollywood.

Petitioner Ina Claire Wallace's relations with Hollywood and its vicinity were casual, professional and temporary. None of her private and intimate attitudes and relationships which go to make up home, as that

[2] Lang v. Commissioner, 289 U.S. 109, 53 S.Ct. 534, 77 L.Ed. 1066; Lynch, Executrix, etc., v. Alworth-Stephens Company, 8 Cir., 294 F. 190, affirmed 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660.

[3] See note of Professor Erwin N. Gris-

wold in Vol. LVI, No. 7, Harvard Law Review, June, 1943, page 1140 et seq.

[4] Coburn v. Commissioner, 2 Cir., 138 F. 2d 763.

[5] American Law Institute, Restatement of Conflict of Laws, section 13.

place is ordinarily designated,[6] found lodgment there. Her physical presence and her place of abode in the vicinity of Hollywood were business necessities, and at no time did she manifest any intention or desire to remain there after completion of her work. All of her expenditures for which the deductions are claimed were allowable business expenses [7] as distinguished from personal expenses [8] and were incurred in the pursuit of and directly connected with a temporary contract of employment while she was away from her usual place of abode.

■ The clearly expressed purpose of Congress in enacting income tax laws is to impose tax burdens upon the *net income* of individuals,[9] and in ascertaining such income when Congress has used only literal terms in specifying the allowable deductions from gross income such meaning of deductions must be accepted by the courts unless such course would lead to absurd results.[10] We can conceive of no such results by giving to the word "home" in the application of Section 23(a) (1) of the Internal Revenue Code its normal and customary meaning. On the other hand, to judicially innovate a meaning of "home" as the taxpayer's "place of business, employment, or the post or station at which he is employed," as the Tax Court has done, would, we think, operate to thwart the obvious purpose of Congress [11] to tax *net* income and would in many cases tax the gross instead of the net income of individuals.[12] The court should function to interdict such a result.

In the briefs of the respective parties various decisions of the Board of Tax Ap-

peals and other administrative agency action, are cited and discussed.[13] Petitioner contends that these rulings are conflicting and irreconcilable in construing the meaning of the word "home" as it is used in Section 23(a) (1) of the Internal Revenue Code and in prior revenue statutes of like import, while respondent asserts that such rulings have evolved neither conflict nor confusion in administrative action. We think it unnecessary in this review to determine whether there is any conflict in the administrative interpretations of the legislation under consideration.

The crucial question here is what is the proper construction to be given to an unambiguous income tax statute, and administrative decisions in such matters, while entitled to respect, are not binding upon the court.[14] It is noteworthy in this regard that the Board of Tax Appeals in situations similar to the one involved in this review has construed the word "home" in like income tax statutes in its usual and common meaning, and not figuratively.[15]

We conclude that the taxpayers, a husband and wife, were entitled under Section 23(a) (1) of the Internal Revenue Code to deduct as traveling expenses "while away from home" amounts expended by Mrs. Wallace for food, rent and household expenses in the vicinity of Hollywood, California, while she was employed there as a motion picture actress during the year 1939.

The decisions of the Tax Court entered May 7, 1943, being "clear-cut mistakes of law" [16] are, and each of such decisions is, reversed.

---

6 "The word home denotes a merely natural and untechnical conception based upon the relation between a person's residence and his intention as to residence." Kennan on Residence and Domicile, p. 40.

7 Section 19.23(a)-1, Treasury Regulation 103.

8 26 U.S.C.A. Int.Rev.Code, § 24, Section 19.24-1, Treasury Regulation 103.

9 26 U.S.C.A. Int.Rev.Code, § 11, 52 Stat. 452; Stewart v. Commissioner, 5 Cir., 95 F.2d 821.

10 See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, at pages 332, 333, 59 S.Ct. 191, 83 L.Ed. 195.

11 Haggar Co. v. Helvering, 308 U.S. 389, at pages 394, 395, 60 S.Ct. 337, 84 L. Ed. 340.

12 See 26 U.S.C.A. Int.Rev.Code, § 21, for definition of Net Income.

13 Griesemer v. Commissioner, 10 B.T.A.

386; Brown v. Commissioner, 13 B.T.A. 832; Potter v. Commissioner, 18 B.T.A. 549; Powell v. Commissioner, 34 B.T.A. 655; Cabot v. Commissioner, Memo Decision, Docket No. 90996, 1939, 39 B.T.A. 1241; G.C.M. 7133, VIII-2, C.B. p. 85; Bixler v. Commissioner, 5 B.T.A. 1181; Duncan v. Commissioner, 17 B.T.A. 1088; Lindsay v. Commissioner, 34 B.T.A. 840; Tracy v. Commissioner, 39 B.T.A. 578; Priddy v. Commissioner, 43 B.T.A. 18.

14 Minnesota Tea Co. v. Commissioner, etc., 8 Cir., 76 F.2d 797, affirmed 296 U. S. 378, 56 S.Ct. 269, 80 L.Ed. 284; Biddle v. Commissioner, etc., 2 Cir., 86 F.2d 718.

15 Griesemer v. Commissioner, 10 B.T.A. 386; G.C.M. 7133, VIII-2, C.B. p. 85; Brown v. Commissioner, 13 B.T.A. 832.

16 Ref. Dobson v. Commissioner, 320 U. S. 489, 64 S.Ct. 239.