George Riscalla and Marjorie A. Riscalla v. Commissioner.
Riscalla v. Commissioner
Docket Nos. 86825, 2291-62, 3962-62.
United States Tax Court
T.C. Memo 1963-117; 1963 Tax Ct. Memo LEXIS 227; 22 T.C.M. (CCH) 541; T.C.M. (RIA) 63117; April 25, 1963
*227 Petitioner, an aircraft mechanic and ground instructor with Republic Aviation Corporation in Farmingdale, New York, was transferred by his employer to Edwards Air Force Base, California, in February 1956, where he remained until he was transferred to Eglin Air Force Base, Florida, in 1960, where he remained until the date of trial. Petitioner's family moved to California in May 1956 and to Florida in August 1960. While employed at Edwards and Eglin petitioner received from his employer a $7 per diem allowance in addition to his regular compensation. Held, that the $7 per diem allowance is includible in petitioner's gross income, and held further, that no part thereof is deductible as traveling expenses while away from home under section 62(2)(B), I.R.C. 1954, or as transportation expenses under section 62(2)(C), I.R.C. 1954, paid or incurred in connection with the performance by him of services as an employee. Hugh F. Culverhouse, Esq., and James E. Miller, Esq., for the petitioners. Jones E. Davis, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax for the years and in the amounts *228 as follows: Year
Amount
1956
$394.23
1957
660.36
1958
603.38
1959
641.97
1960
744.96
1961
760.74 These cases, involving principally the same issue in different years for the same taxpayers, were consolidated for trial and opinion. The only remaining issue is whether per diem payments in the amount of $7 per day made to petitioner by his employer, in addition to his regular compensation, while stationed at Edwards Air Force Base in California and at Eglin Air Force Base in Florida, are deductible as travel or transportation expenses under section 62(2) of the 1954 Code. [1]
Findings of Fact Petitioners are husband and wife residing at Fort Walton Beach, Florida. They filed joint Federal income tax returns with the district directors of internal revenue, for the years 1956, 1957, and 1958 at Los Angeles, California, for the years 1959 and 1961 at Brooklyn, New York, and for the year 1960 at Jacksonville, Florida. George Riscalla, hereinafter referred to as petitioner, is an aircraft and engine mechanic and ground instructor. He began his employment with Republic Aviation Corporation, hereinafter referred to as Republic, in 1950 at Farmingdale, Long Island, *229 New York, as a final assembly mechanic in the experimental department, and was continuously employed by that company until the date of trial. In 1953 he became an assistant foreman and supervised the installation and checking of various systems in the XF-105 aircraft. Petitioner lived with his family in his own home on Long Island prior to 1956. Republic is a manufacturer of aircraft and other airborne articles and produces aircraft and air material for the United States Government under contracts which are terminable at the convenience of the Government. Republic's manufacturing operations and all administrative functions, as well as a flight-testing program, are conducted at its plant at Farmingdale, which is considered the home base for all the company's technical employees. The overall operations of Republic are carried on in several divisions such as research, designing, manufacturing, and testing. The headquarters of the testing division is at Farmingdale. The testing division has jurisdiction over various kinds of testing, including flight testing of prototypes of aircraft in preparation for their manufacture. The testing division also conducts tests at various Air Force installations *230 throughout the country such as Edwards Air Force Base, California, Eglin Air Force Base, Florida, Nellis Air Force Base, Nevada, and Holloman Air Force Base, New Mexico. Republic employs approximately 16,000 employees, of which several hundred personnel were involved in the flight-testing program at Edwards and at Eglin. The flight-testing program began at Edwards in the late 1940's and continued there until early 1960 at which time these activities were transferred to Eglin. Although all the facilities at Edwards are owned by the United States, certain test, hangar, and support facilities located there were made available to several aircraft manufacturing concerns, including Republic. Republic has made no substantial capital expenditures of any type either at Edwards or at Eglin. Edwards has been maintained by the United States Air Force for many years. It is located in the Mojave Desert in California about 100 miles from Los Angeles. The towns closest to it are Lancaster, 31 miles away, and Palmdale, 41 miles distant. Prior to 1953 a master plan was drawn by the Air Force, the Navy, and others for the enlargement and modernization of Edwards for testing supersonic aircraft and missiles. *231 The plan was approved in 1954 and was carried out and financed by the Government. The new facilities were first used by Republic in the early part of 1956. As a result of this development the population of Lancaster increased greatly during the 1950's. [2] During the years 1956-1960, Republic employed between 200 and 300 personnel at Edwards. Prior to 1960 Republic also conducted operations at Eglin, and from early 1960 most of its flight-testing operations have been conducted at Eglin. Republic did not know when it sent an employee to a test site how long an employee would be there. The number of employees at a field testing facility, and the duration of their stay, was contingent upon Government termination of contracts, increase or reduction in the number of aircraft that were being tested, accidents to the aircraft, the length of time it took to complete the test to which a particular employee was assigned, and the requirement *232 for his capabilities elsewhere. An employee sent to a testing facility was subject to recall without notice at the company's convenience. Such employee might be returned to the Farmingdale plant or transferred to another testing facility. When an employee was sent to a testing site his supervisor could only give him a guess or estimate of the time the employee would be at the testing site. Employees sent to Edwards and Eglin have at times been returned to Farmingdale after a shorter period of time than originally estimated. It was not unusual for an employee to take his family with him when he was sent to a field testing facility. Republic classified Edwards as a permanent installation in the year 1955 because of the development program conducted by the Government. In the latter part of 1955 Republic was having trouble keeping its employees at Edwards because other manufacturers were making payments in addition to regular compensation to their employees working at Edwards. Beginning in November 1955 and thereafter at both Edwards and Eglin, it was the policy of Republic to pay all supervisory and technical personnel working at these bases $7 per day 365 days a year, in addition to *233 their regular compensation. This continued until early 1962. Republic did not withhold income tax on these allowances until it started doing so in 1960. Republic's published travel and expense policy for its employees during the period here involved provided for a fixed per diem of $13 per day for the first 28 days of a trip, and $10 per day thereafter. Republic paid the cost of moving an employee's family and furniture to a new worksite if it was anticipated the assignment would be for more than 6 months. It also paid expenses incurred in moving back to Farmingdale or to a new assignment in case of recall or reassignment of an employee. Employees assigned to Edwards and Eglin received the $7 per diem whether or not they moved their families to the worksite. If an employee traveled away from the desert worksite he received the above travel allowances in addition to the $7 per diem. Republic placed no restrictions on the use of the $7 per diem by its employees and required no accounting thereof. Republic sent petitioner to Edwards to work on testing the XF-105 aircraft for a period of 5 weeks in the latter part of 1955. Petitioner received the $13 per diem allowance during this period *234 but not the $7 per diem. Petitioner was again sent to Edwards on short notice in February 1956. He was assigned to the XF-105 flight-testing program and his duties were to check, repair, and modify different systems of the aircraft. While petitioner was not told how long he would be at Edwards he immediately began arranging his personal affairs in New York for the move, including making arrangements for the sale of his house on Long Island. However, petitioner's wife and child did not move to California until May 1956, at which time the house had been sold. Petitioner stayed at a motel in the Edwards area from February 1956 until his family moved to Lancaster, California, in May, during which time petitioner received an allowance of either $13 or $10 per diem. Petitioner's family moved to Lancaster in May 1956, and they all lived in a rented house until the new home petitioner had purchased in Lancaster was completed in October or November, 1956. Petitioner and his family continued to live in the latter house until they moved to Eglin in 1960. Republic paid all the cost of moving petitioner's family from New York to Lancaster. After petitioner's family moved to Lancaster petitioner *235 received the $7 per diem allowance during his entire stay at Edwards. Prior to May 1956 petitioner sold his home in New York and closed out his bank accounts there. He opened bank accounts in Lancaster, voted in local elections there, and used California license tags on his car during the remainder of his stay there. He filed State of California income tax returns for the years 1956-1960 on which he indicated he was a resident of California. He did not file State of New York income tax returns for the years 1956-1961. In April 1960 petitioner was transferred by Republic to the test site at Eglin, where he worked up to the date of trial on an experimental testing program for Republic under its contracts with the Air Force. When he was sent to Eglin petitioner had no idea how long he would be there. In August 1960 petitioner moved his family from Lancaster to Fort Walton Beach, Florida, where he rented a house. Republic paid the expenses of moving petitioner's family from California to Florida. Petitioner attempted to sell his house in Lancaster but had been unable to do so up to the date of trial, at which time the house was still being rented. Since moving to Florida petitioner has *236 voted in local elections there and used Florida license plates on his automobile. Until January 1962, the $7 per diem was paid to petitioner and other employees at Edwards and Eglin by a separate check from the regular payroll check. In January 1962 the separate payments were stopped, and the base salaries of those employees were raised at that time. Republic does not require its personnel to use their own cars in traveling around an Air Force base on company business. Republic furnishes vehicles for transportation of its employees on the base, but often there were not enough company vehicles available, in which case an employee often used his own car. While at Edwards petitioner often used his own car on company business traveling from one worksite on the base to another. It was approximately 15 miles from one Republic worksite at Edwards to the other, and it was approximately 25 miles from the main gate at Edwards to petitioner's principal worksite. Ultimate Finding Expenses incurred by petitioner while at Edwards and Eglin during the period here involved were not expenses of transportation or of travel, meals, and lodging while away from home, paid or incurred by petitioner in connection *237 with the performance by him of services as an employee within the meaning of sections 62(2) and 162(a). Opinion The only issue is whether petitioner is entitled to deduct as reimbursed expenses all or any part of the $7 per diem paid him by his employer, Republic, in addition to his regular compensation, while he was employed at Edwards Air Force Base in California and Eglin Air Force Base in Florida. It is stipulated that petitioner's expenses while at those places, including the amounts expended for meals and lodgings, amounted to at least $7 per day. This issue, under somewhat similar circumstances, has been before the courts many times in recent years. [3]
The per diem allowances paid to employees of Republic working at these bases were intended to cover the extra cost of living and as an incentive to employees to work at these out-of-the-way places. They were undoubtedly *238 gross income to the employees under section 61(a), Darrell Spear Courtney, 32 T.C. 334 (1959), and petitioner does not contend otherwise. However, in computing adjusted gross income, an employee is allowed by section 62(2) to deduct the expenses allowed by section 162 which consist of expenses of travel, meals, and lodging while away from home, and the expenses of transportation, paid by the taxpayer in connection with the performance by him of services as an employee. Section 162(a) allows a deduction for ordinary and necessary business expenses, including "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business." The Supreme Court in Commissioner v. Flowers, 326 U.S. 465 (1946), rehearing denied, 326 U.S. 812 (1946), set forth three tests which must be satisfied before a deduction for travel expense is allowable: (1) The expenditures must be reasonable and necessary; (2) they must be incurred "while away from home"; and (3) they must be incurred in pursuit of business, that is, there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer *239 or his employer. The Court also said the determination whether the expenditure meets these tests is purely a question of fact in most instances. We are primarily concerned here with the second test. This Court has held on numerous occasions that the word "home" as used in section 162(a)(2) means a taxpayer's principal place of business or employment, his post of duty or station at which he is employed. Leo C. Cockrell, 38 T.C. 470 (1962) on appeal (C.A. 8, Sept. 25, 1962); Floyd Garlock, 34 T.C. 611 (1960); James R. Whilaker, 24 T.C. 750 (1955). Petitioner, on brief, notes that the Courts of Appeals for the Second, Fifth, Eighth, and Ninth Circuits, in Coburn v. Commissioner (C.A. 2), 138 F. 2d 763, Flowers v. Commissioner, (C.A. 5) 148 F. 2d 163, Commissioner v. Janss, (C.A. 8) 260 F. 2d 99, [4] and Wallace v. Commissioner, (C.A. 9) 144 F. 2d 407, respectively, do not agree that the word "home" as used in the statute means business home rather than "home" as understood and applied in its ordinary sense. Be that as it may, the question is of little importance here because there is nothing in this record to indicate that during the period here involved [5] *241 petitioner's home, as *240 understood in the ordinary sense, was anywhere other than Lancaster, California, or Fort Walton Beach, Florida, where he and his family lived. Petitioner sold his house in New York when he and his family left there in 1956 and so far as we can tell from this record he maintained no ties with New York which would support that place as his "home" as used in the ordinary sense. His argument must necessarily be based on the concept that Farmingdale continued to be his and/or his employer's principal place of business so that petitioner was away from his "business" home while at Edwards and Eglin. Petitioner incurred no expense in maintaining a home for his family separate and apart from his place of employment. See Harvey v. Commissioner, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959); Leo M. Verner, 39 T.C. - (Feb. 11, 1963).
This brings us to the question whether petitioner's tax "home" was in Farmingdale, New York, as we understand him to claim, or at Edwards and Eglin, where he actually worked and in the vicinity of which he and his family lived. This Court and other courts have allowed a deduction for travel expenditures when the taxpayer's employment away from his original or home base is temporary rather than indefinite or indeterminate. Peurifoy v. Commissioner, 358 U.S. 59, 61 (1958), and cases cited therein; Claunch v. Commissioner, 264 F. 2d 309 (C.A. 5, 1959), affirming 29 T.C. 1047 (1958); Leo C. Cockrell, supra.In deciding this factual question consideration has been given to whether the employment is such that its termination within a reasonably short time could be foreseen, Beatrice H. Albert, 13 T.C. 129 (1949), as well as to the actual duration of such employment. Floyd Garlock, supra.
On the evidence in this case we do not believe either petitioner or his employer anticipated that petitioner's work at Edwards *242 would terminate in a reasonably short time when he was sent there in February 1956. Petitioner immediately set about to sell his house in New York and apparently Republic was at that time willing to pay his moving expenses, which under its announced policy meant it anticipated petitioner's stay at Edwards would last at least 6 months. While it is true there may have been no certainty that petitioner would stay at Edwards for a long time, there is nothing in the evidence, except possibilities and suppositions, to indicate petitioner's employment at Edwards would terminate within a reasonably short time. See Beatrice H. Albert, supra; Josette J. F. Verrier Friedman, 37 T.C. 539 (1961). And, of course, his employment there and away from New York was in fact of long duration. Petitioner relies primarily on Harvey v. Commissioner, supra, in support of his position. In that case, the Court of Appeals for the Ninth Circuit, in reversing this Court, promulgated a rule or test for determining whether an employee was away from home within the intendment of the statute, as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may *243 be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. On the other hand, if it is very likely that taxpayer's stay away from home will be short; then it seems quite unreasonable to expect him to move his domicile, even though it cannot be said that his employment will terminate "within a fixed or reasonably short period," to use the words of the Tax Court. We do not think this test requires a different conclusion than announced above on the facts in this case. Petitioner testified that he did not know how long he would stay at Edwards when he was sent there in February 1956 - he did not testify that he anticipated it would be for either a long or a short period. However, his actions indicate that he at least recognized the probability that his stay at Edwards might be for an extended period. He immediately started making arrangements to move his residence and his family to California. That, in the words of the Court of *244 Appeals, it was reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that Congress intended to mitigate, is further bolstered by the fact that he actually moved his family to California in May and thereafter apparantly had no living expenses anywhere but in California. [6]
Furthermore, it has been recognized that a change of employment originally anticipated to be temporary may ripen into one of a sufficiently substantial, indefinite, and indeterminate duration as to make the situs of such employment the employee's tax home for purposes of the statute. Commissioner v. Peurifoy, 254 F. 2d 483 (C.A. 4, 1957), affirmed per curiam 358 U.S. 59 (1958); Leo M. Verner, supra; Floyd Garlock, supra.Even if it was not known to petitioner in February 1956 that there was a reasonable probability that he might be employed at Edwards for a long period of time, he must have known when he moved his family to California in May that there was a reasonable probability he would be there for some time. And *245 when he did move his family to California, and later to Florida, the legislative purpose of eliminating the double burden of maintaining two homes, upon which the Ninth Circuit premised its test, was effectuated. It would hardly seem unreasonable to expect petitioner to move his "residence" or "domicile" when he did so of his own volition. Leo M. Verner, supra; Leo C. Cockrell, supra.We conclude that petitioner's home within the purview of sections 62(2) and 162(a) was at either Edwards or Eglin after he left Farmingdale in 1956, and that the expenses he incurred for travel, meals, and lodgings while there were not deductible as away-from-home expenses under those sections. Petitioner argues for the first time on his original brief that the cost of petitioner's use of his own car in traveling around the base at Edwards is deductible as transportation expense under section 62(2)(C), and on reply brief that the cost of traveling from Lancaster to the base and back in his own car is also deductible. Respondent argues that this issue was not properly raised in the pleadings as an assignment of error and should not be considered by this Court. While this issue was not specifically mentioned *246 in the pleadings we think the assignment of error in the petition is sufficiently broad to cover it. Nor do we think respondent was surprised by this argument. Respondent in cross-examining petitiner's first witness, was the first to adduce evidence with respect to transportation expenses. This Court has very recently held in Leo M. Verner, supra, that the cost of an aircraft employee's transportation between Lancaster and Edwards during this same period was a personal commuting expense and not deductible, distinguishing Wright v. Hartsell, 305 F. 2d 221 (C.A. 9, 1962). On the authority of that case and others relied on therein we hold that petitioner is not entitled to deduct the cost of his transportation between Lancaster and Edwards. To the extent that petitioner's use of his automobile in traveling from one job site on the base to another was required in connection with the performance of his services as an employee, we think the cost thereof would be deductible under section 62(2)(C). See Rev. Rul. 55-109, 1955-1 C.B. 261; William L. Heuer, Jr., 32 T.C. 947 (1959), affirmed per curiam 283 F. 2d 865 (C.A. 5, 1960). However, the burden of proving that it was and the amount *247 thereof is on petitioner. On the record before us we cannot determine whether petitioner's use of his car on the base was required as a part of his duties or was merely voluntary, whether it was a reimbursable expense or not, and we cannot even estimate what the cost thereof might have been. Consequently, we must hold against petitioner on this issue for failure to carry his burden of proof. Petitioner did not include in income on any of his returns the $7 per diem - he simply showed a lump sum as "Reimbursed Job Expense" and did not extend it. The parties stipulated that if it is determined that petitioner was away from home while employed at Edwards and Eglin, "then his away from home expenses (including the amount expended for meals and lodging) under Section 162 * * * amounted to at least $7.00 per day." Inasmuch as we have found that petitioner was not away from home at Edwards, this stipulation means nothing. Petitioner did not allege any facts in his petition in support of a transportation expense deduction. So we are left with only such evidence on the issue as was presented at the trial. The assistant secretary and treasurer of Republic testified on cross-examination that *248 the company did not expect its supervisory personnel to use their own cars on company business at Edwards, that the company provided vehicles for transportation of its employees around the base, and that while there were times when employees might be asked to use their own cars when a company vehicle was not available, they would not be required to use them. On the other hand a letter dated November 22, 1961, from the manager of Republic's facilities at Edwards during 1956-1958, addressed "TO WHOM IT MAY CONCERN" and received in evidence without objection by respondent, states that during this period it was expected that petitioner and other supervisory employees at Edwards would provide their own transportation during conduct of company business, and in consideration of such costs as well as other unusual expenses incurred, petitioner was reimbursed at a fixed weekly rate. Petitioner testified that he felt it was his duty or responsibility to the company to use his own car if a company car was not available - but he did not indicate he had been directed to do so by his superiors. Petitioner testified that on the average he might drive his car 75 miles per day on the base, but that *249 about 50-55 miles of this would be traveling to and from the main gate to his place of work. We are of the opinion that this latter mileage would be considered a part of his commuting to and from his home and the cost thereof would not be deductible. There is not sufficient evidence in the record to permit us to determine whether the balance of this mileage was required as a part of, or connected with, petitioner's performance of his duties, or if so, to make even an educated guess as to the cost thereof, so respondent's determination that no part of the travel or transportation expenses is deductible must stand. Because of concessions on other issues by both parties, Decisions will be entered under Rule 50. Footnotes
1. All section references are to the 1954 Code.↩
2. A description of the Edwards Air Force Base and its development can be found in the numerous cases involving this question such as John J. Harvey, 32 T.C. 1368 (1959); Darrell Spear Courtney, 32 T.C. 334↩ (1959); Leo M. Verner, 39 T.C. - (Feb. 11, 1963).
3. In addition to the cases cited in the body of this opinion see recent Memorandum Opinions of this Court: Walter B. Mullens, Jr., T.C. Memo. 1963-7; F. Earl Filler, Jr., T.C. Memo. 1962-254; William M. Kalist, Jr., T.C. Memo. 1962-159; Victor Carlo, T.C. Memo. 1962-79; Thomas E. Stephenson, T.C. Memo. 1961-27↩.
4. This case does not seem to support the proposition for which it is cited. ↩
5. We cannot tell with certainty from the record whether respondent has included in petitioner's income any reimbursed expenses received by petitioner prior to May 1956 when petitioner's family moved to Lancaster and he started receiving the $7 per diem. However, the additional income charged to petitioner for the year 1956 for "Reimbursed job expense" was $1,568, which could be $7 per day for 224 days. The last 224 days of 1956 would start in May.
6. The fact that his living expenses in California may have been higher than in New York has no bearing on the question under these circumstances.↩