**Herbert HOOVER, III, et al., Plaintiffs,**

**v.**

**UNITED STATES of America,**
**Defendant.**

**Civ. No. 70–2609–RJK.**

United States District Court,
C. D. California.

Sept. 19, 1972.

Latham & Watkins, Austin H. Peck, Jr., John H. Hall, Los Angeles, Cal., for plaintiffs.

William D. Keller, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Div., Los Angeles, Cal., for defendant.

## OPINION

KELLEHER, District Judge.

This is an action for the refund of federal income taxes for the fiscal year ended December 31, 1966, in the amount of $45,836.00, plus interest thereon.

Plaintiff Margaret Watson Hoover resides in Los Angeles, California. Herbert Hoover, Jr., was the husband of plaintiff Margaret Watson Hoover and resided in Los Angeles, California, at the time of his death on July 9, 1969. Hereinafter, plaintiff Margaret Watson Hoover and Herbert Hoover, Jr., Deceased, are referred to as the "Hoovers."

Jurisdiction of the subject matter is predicated upon Title 28, U.S.C.A. § 1346(a)(1).

Since the parties agree on the facts, the case will be treated as one in which cross motions for summary judgment have been made.

The following matters are admitted:

(a) That venue of this action is proper in this District.

(b) That the Court has jurisdiction of the subject matter under Title 28, U.S.C.A. § 1346(a) (1).

(c) Plaintiff Margaret Watson Hoover's residence is the County of Los Angeles, in the Central District of California. Herbert Hoover, Jr., who was the husband of plaintiff Margaret Watson Hoover, resided in the County of Los Angeles, in the Central District of California, at the time of his death on July 9, 1969.

(d) The defendant is the United States of America.

(e) On or before April 15, 1967, the Hoovers filed their federal income tax returns for the fiscal year ended December 31, 1966, showing a total income tax thereon of $1,010,-266.00, all of which tax the Hoovers paid to defendant with said income tax return or by payments or credits on quarterly declarations of estimated tax.

(f) On April 1, 1970, plaintiffs filed with defendant a claim for refund of their federal income tax and interest which had been assessed for the fiscal year ended December 31, 1966, of $45,836.00, plus interest on the total as required by law.

(g) No part of the federal income tax and interest allegedly overpaid by plaintiffs to defendant has been credited or refunded to plaintiffs.

(h) The present action was filed on November 19, 1970, more than six months after claim for refund was filed.

(i) The claim for refund was disallowed on December 22, 1970.

(j) Prior to December 31, 1962, plaintiffs and other United States shareholders acquired ownership of more than fifty per cent of the total combined voting power of all classes of stock entitled to vote in Numar, S. A., a Costa Rican corporation (the name of which was, at the date of its liquidation, Industrias Vista Alegre, S. A.). During all of its fiscal years beginning after December 31, 1962, Numar, S. A., was engaged in the business of manufacturing solely in Costa Rica and selling solely in Costa Rica and other countries in Central America oleo-

margarine, salad oil, salad dressings, and similar food products. Its gross income was primarily from sales within Costa Rica and only a relatively small amount of sales was made to other Central American countries. Of its total voting stock, consisting of 198,000 shares, plaintiffs owned 53,400 shares, or 26.-96969 per cent.

(k) In 1965 Numar, S. A., a corporation organized under the laws of Costa Rica, adopted a plan of complete liquidation and sold its assets to United Fruit Company.

(l) In 1966 final liquidating distributions were received by the United States shareholders of Numar, S. A. (at the time of liquidation the corporate name was "Industrias Vista Alegre, S. A."), including the Hoovers, gain on which is (except as otherwise provided in sections 551 and 1248 of the Internal Revenue Code) taxable under section 331 of the Internal Revenue Code as full payment in exchange for the stock.

(m) During all of its fiscal periods beginning both before and after December 31, 1962, and to and including the date of sale by Numar, S. A., of all of its assets to United Fruit Co.,

(1) all of Numar's business (other than incidental purchases) was done in Costa Rica and, to the extent of its foreign sales, in other countries in Central America;

(2) all of its gross income was derived from the manufacture in Costa Rica and the sale in Costa Rica and other countries in Central America of oleomargarine, salad oil, salad dressings and similar food products. Its gross income was primarily from sales within Costa Rica and only a relatively small amount of sales was made to other Central American countries.

(n) In their federal income tax return for the year 1966 plaintiffs included dividends received during the taxable year from Industrias Vista Alegre, S. A., (formerly Numar, S. A.) and, pursuant to section 551 of the Internal Revenue Code, their proportionate share of the remaining net income of Industrias Vista Alegre, S. A., for its taxable period ended with its complete liquidation.

(o) As between the parties, there is no issue as to the extent of the earnings and profits of Industrias Vista Alegre, S. A.

Section 331 of the Code provides that, "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock." Prior to the enactment of section 1248 of the Internal Revenue Code in 1962, gain realized by a United States citizen from the complete liquidation of a foreign corporation was taxable as a capital gain under section 331.

Under section 1248(a) gain realized from the complete liquidation of a foreign corporation is now includable in gross income as a dividend. Section 1248(b), however, limits the amount taxable as a dividend to a sum not greater than—

"1. a pro rata share of the excess of . . . (A) the taxes that would have been paid by the foreign corporation with respect to its income had it been taxed under this chapter as a domestic corporation . . . and

"2. an amount equal to the tax that would result by including in gross income, as gain from the sale or exchange of a capital asset held for more than 6 months, an amount equal to the excess of (A) the amount included in gross income as a dividend under subsection (a), over (B) the amount determined under paragraph (1)."

In effect, gain treated as a dividend under section 1248(a) is limited to the difference between the corporate income taxes actually paid and the corporate income tax which would have been paid had the corporation been taxed under Chapter 1 of the Internal Revenue Code.

At issue is what amount of corporate income taxes Numar, S. A., would have paid had it been taxed as a domestic corporation.

The Hoovers contend that sections 921 and 922 of the Internal Revenue Code, which appear in Subchapter N of Chapter 1 of the Code, apply to section 1248 (b) computations. Sections 921 and 922 deal with Western Hemisphere Trade Corporations, and grant a special deduction in computing taxable income to qualifying corporations. Section 921 defines a Western Hemisphere Trade Corporation as a—

"(A) domestic corporation all of whose business . . . is done in any country or countries in North, Central, or South America, or in the West Indies, and which satisfies the following conditions: (1) if 95 percent or more of the gross income of such domestic corporation for the 3-year period immediately preceding the close of the taxable year . . . was derived from sources without the United States; and (2) if 90 percent or more of its gross income for such period or such part thereof was derived from the active conduct of a trade or business. . . ."

Section 922 provides for the special deduction in computing taxable income. Had it been a domestic corporation, Numar, S. A., would have qualified as a Western Hemisphere Trade Corporation. If the amount of gain to be treated as a dividend under section 1248(b) is computed with regard to the special deduction allowed by section 922, then the Hoovers are entitled to the refund they claim.

The United States maintains that Treasury Regulation, section 1.1248–4 (e)(1)(i) precludes the use of the section 922 special deduction. Treasury Regulation section 1.1248–4(e)(1)(i) provides that the tax that would have been paid if a foreign corporation had been a domestic corporation shall be computed without regard to Subchapter N. Essentially, the United States interprets Treasury Regulation section 1.1248–4(e) (1)(i), as applied to the Hoovers, to modify the language of section 1248(b) from ". . . the taxes that would have been paid by the foreign corporation with respect to its income had it been taxed under this chapter as a domestic corporation . . . " to " . . . the taxes that would have been paid by the foreign corporation with respect to its income had it been taxed under this chapter as a domestic corporation whose income is derived from sources within the United States. . . . "

The modification of section 1248(b) by Treasury Regulation section 1.1248–4(e)(1)(i), to prohibit the use of Subchapter N in section 1248(b) computations, is invalid. Statutory interpretation demands that statutory language be given its plain, obvious, and rational meaning rather than its arguably sound, but unexpressed meaning. Wallace v. Commissioner of Internal Revenue, 144 F.2d 407 (9th Cir. 1944). Section 1248 (b) unequivocally defines the limitation on the amount of gain to be treated as a dividend by reference to the tax which the foreign corporation would have paid had it been taxed under Chapter 1 as a domestic corporation. Administrative regulations cannot be allowed to distort plain and obvious statutory language.

Numar, S. A., if it had been a domestic corporation, would have qualified as a Western Hemisphere Trade Corporation and, thus, would have received the special deduction allowed in computing its taxable income.

Accordingly, plaintiffs are entitled to and shall recover from the defendant the sum of $45,836.00, plus interest to date of entry of judgment at the rate of six per cent per annum, plus interest as provided by law until paid.

This opinion shall constitute the Court's findings of fact and conclusions of law. Counsel for plaintiffs will prepare, serve and lodge an appropriate judgment pursuant to Local Rule 7.