DAVID AND LINDA FAIRCLOTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Faircloth v. Commissioner
Docket No. 5694-80.
United States Tax Court
T.C. Memo 1982-208; 1982 Tax Ct. Memo LEXIS 541; 43 T.C.M. (CCH) 1115; T.C.M. (RIA) 82208; April 19, 1982. *541 Petitioners' residence was at Virginia Beach, Virginia. From July 1977 to September 1978, petitioner-husband was employed as an electrician on the construction of the North Anna nuclear power plant, near Mineral, Virginia. Petitioner-husband generally drove the 316-mile round trip every working day. Held: Petitioners have failed to show that petitioner-husband's employment at the North Anna project site was temporary; petitioner-husband's daily transportation expenses are not deductible under section 162(a), I.R.C. 1954. David Faircloth, pro se. Scott D. Anderson, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners for 1977 and 1978 in the amounts of $ 936 and $ 1,169, respectively. After a concession by respondent, the issue for decision is whether petitioners may deduct under section 162(a)[1] *542 automobile expenses incurred by petitioner David Faircloth in traveling each working day between his residence and his place of employment. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners David Faircloth (hereinafter sometimes referred to as "Faircloth") and Linda Faircloth, husband and wife, resided in Virginia Beach, Virginia. Petitioners have lived in the Virginia Beach area since 1967. All four of their children have been educated in the Virginia Beach school system. Faircloth practiced the trade of an electrician from 1959 to the years in issue. From July 22, 1969, through the years in issue, Faircloth was a member of Local 80 of the International Brotherhood of Electrical Workers, based in Norfolk, Virginia. (This local is hereinafter sometimes referred to as "the Norfolk local".) In July 1977, the Norfolk local referred Faircloth to the local located in Richmond, Virginia (hereinafter sometimes referred to as "the Richmond local"), which in turn referred Faircloth to the employment office of Fischback and Moore, Inc. (hereinafter sometimes referred to as "F&M"), located at the site of the construction of the North *543 Anna nuclear power plant, near Mineral, Virginia. (This construction project is hereinafter sometimes referred to as "the North Anna project".) Faircloth was employed by F&M as a journeyman electrician, beginning on July 11, 1977. F&M assigned Faircloth to work on the Temporary Light and Power Crew which provided power and illumination for the construction crews working on the North Anna project. Faircloth remained on the Temporary Light and Power Crew until about the middle of August 1978, when he was transferred to an electrical work crew. During the period in which F&M employed Faircloth, its electricians normally worked six twelve-hour shifts or seven ten-hour shifts each week. Some electricians worked six ten-hour shifts each week. On September 9, 1978, F&M terminated Faircloth's employment because of his excessive absenteeism and loss of time during the last few weeks he worked on the North Anna project. During the period in which Faircloth worked for F&M on the North Anna project, he lived with his family in Virginia Beach. With a few exceptions when he would spend the night in the Mineral area, Faircloth drove from Virginia Beach to the North Anna project site and back *544 to Virginia Beach each day. Each of these round trips was 316 miles long. On each round trip Faircloth paid tolls totaling $ 1. On their 1977 Federal income tax return petitioners deducted $ 5,125 as employee business expenses, based on Faircloth's estimate that he drove a total of 39,500 miles to and from the North Anna project and spent $ 125 for tolls during these trips. These estimates were, in turn, based on Faircloth's estimate that he worked an average of five days each week for the 25 weeks in 1977 after he was hired for the North Anna project. On their 1978 tax return petitioners deducted $ 6,355 as employee business expenses. This amount includes $ 77 for tolls and the standard mileage expense for 50,530 miles for trips to and from the North Anna project site. [2]
F&M made no seasonal layoffs of electricians because of weather conditions at the North Anna project. F&M laid off electricians because of reductions in force resulting from completion of different *545 construction phases at the North Anna project. When layoffs occurred, the least qualified electricians normally were the first laid off without regard to whether these electricians belonged to the Richmond local or the Norfolk local. Faircloth was never laid off by F&M because of a reduction in force. OPINION Petitioners maintain that the cost of Faircloth's automobile expenses for his workday round trips between the North Anna project site and their Virginia Beach home are deductible under section 162(a) as ordinary and necessary expenses of Faircloth's trade or business because his job at the site was temporary rather than indefinite. Respondent asserts that the "expenses paid by David Faircloth in commuting" [3] are nondeductible personal expenses because petitioners have failed to show that Faircloth's employment at the North Anna project site was temporary rather than indefinite. We *546 agree with respondent. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 (sec. 262). [4] The transportation expenses ordinarily incurred in going between one's abode and one's place of business are nondeductible personal expenses under section 262. Fausner v. Commissioner,413 U.S. 838 (1973); Commissioner v. Flowers,326 U.S. 465 (1946); section 1.262-1(b)(5), Income Tax Regs.Section 162 (a)[5] *547 expressly provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Generally, for transportation expenses to be deductible as expenses incurred in pursuit of business, "[t]he exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." Commissioner v. Flowers,326 U.S. at 474. Petitioners do not contend that Faircloth's expenses are deductible under section 162(a)(2) as traveling expenses while away from home, not even with respect to those occasions when Faircloth stayed overnight in the Mineral area. See UnitedStates v. Correll,389 U.S. 299 (1967); Coombs v. Commissioner,608 F.2d 1269, 1276-1277 (CA9 1979), affg. in part and revg. in part 67 T.C. 426 (1976). They assert, instead, that his transportation expenses are deductible as ordinary and necessary business expenses under the "lead-in language" of section 162(a). An exception has been developed to the general rule that "home" as used in section 162(a)(2) means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. Under this exception, a taxpayer's personal residence may be his or her "tax home", and the taxpayer's absence from that home may *548 give rise to an ordinary and necessary expense of the taxpayer's trade or business, if the taxpayer's principal place of business is "temporary", rather than "indefinite". See Peurifoy v. Commissioner,358 U.S. 59, 60 (1958). This exception is relevant to section 162(a)(2) cases and not to general section 162(a) cases. Turner v. Commissioner,56 T.C. 27 (1971), vacated and remanded on respondent's motion in an unpublished order (CA2 1972). See Coombs v. Commissioner,608 F.2d at 1276, n. 3. Nevertheless, the parties herein have framed their dispute largely in terms of whether Faircloth's work at the North Anna project site during the years before the Court was "temporary", or "indefinite", within the meaning of the Peurifoy exception. Under this Peurifoy exception, a place of business is a "temporary" place of business if the employment is such that "termination within a short period could be foreseen". Albertv. Commissioner,13 T.C. 129, 131 (1949). See Michaels v. Commissioner,53 T.C. 269, 273 (1969). Or, viewed from the other side of the coin, an employment is for an "indefinite", "substantial", or "indeterminate" period of time if "its termination cannot be foreseen within *549 a fixed or reasonably short period of time." Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (CA6 1971). "Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner,49 T.C. 557, 562 (1968). These are questions of fact ( Peurifoy v. Commissioner,358 U.S. at 60-61), as to which petitioners have the burden of proof ( Daly v. Commissioner,72 T.C. 190, 197 (1979), affd. 662 F.2d 253 (CA4 1981)). The record includes no evidence that Faircloth was told the job would be for a short period, or for any particular period. The parties have stipulated that Faircloth's employer did not make seasonal layoffs because of weather conditions. The record does not indicate that Faircloth's status as a member of the Norfolk local, rather than the Richmond local, would significantly increase his likelihood of being laid off in a short time. Faircloth worked for 14 months on the North Anna project and was fired because of his own absenteeism, not because of a layoff. On the basis *550 of the record in the instant case, we conclude that petitioners have failed to carry their burden of proving that Faircloth had reason to foresee termination of his employment at the North Anna project site "within a short period". We conclude that the Peurifoy "temporary" rule does not apply to this employment. See Babeaux v. Commissioner,601 F.2d 730 (CA4 1979), revg. three Memorandum Opinions of this Court. [6]McCallisterv. Commissioner,70 T.C. 505 (1978); Norwood v. Commissioner,66 T.C. 467 (1976). See also Blatnick v. Commissioner,56 T.C. 1344 (1971). Petitioners direct our attention to the following cases: Peurifoy v. Commissioner,supra;Commissioner v. Flowers,supra;Frederick v. United States,603 F.2d 1292 (CA8 1979); Curtis v. Commissioner,449 F.2d 225 (CA5 1971); Doyle v. Commissioner,354 F.2d 480 (CA9 1966); Wallace v. Commissioner,144 F.2d 407 (CA9 1944). As petitioners note, the taxpayer-employees in Peurifoy were employed for continuous periods of 20 1/2 months, 12 1/2 months, and 8 1/2 months, respectively, each employment *551 ending in the year there in issue. The Supreme Court concluded that the Court of Appeals for the Fourth Circuit was correct in holding that these employments were not "temporary", in the context of the "temporary" versus "indefinite" test presented in Peurifoy. Petitioners refer to Justice Douglas' dissenting opinion in Peurifoy. Unfortunately for petitioners, the majority of the Supreme Court disagreed with Justice Douglas' dissenting opinion. In the instant case we follow the instructions given to us by the Supreme Court in Peurifoy.
Similarly, we follow and rely on the Supreme Court's instructions in Flowers. We do not understand what different conclusion petitioners wish us to draw from Flowers.
In Frederick v. United States,supra, the Court of Appeals for the Eighth Circuit stressed the knowledge of the workers at a construction project that employment there was seasonal and that there was a great likelihood of layoffs for three-month periods during the winter. The Court of Appeals noted that 80 percent of Frederick's coworkers were laid off the first winter, that 50 percent were laid off the following two winters, and that Frederick was the only man in his work crew of 15 *552 to 20 people who remained on for the winter. 603 F.2d at 1296. The Court of Appeals also pointed out that any layoff would result in the employee being placed at the bottom of the union's job referral list, with the probability that the next job offered to the laidoff employee would be on a different construction project. 603 F.2d at 1296-1297. In the instant case, petitioners have to show that Faircloth was "faced with a high probability of layoffs and work stoppages." Weiberg v. Commissioner,639 F.2d 434, 437 (CA8 1981), affg. a Memorandum Opinion of this Court. [7] Indeed, the parties have stipulated that there were no seasonal layoffs by F&M. We conclude that Frederick is distinguishable on the facts because the record in the instant case fails to show elements of temporariness analogous to those which the Court of Appeals deemed important in Frederick.See Weiberg v. Commissioner,supra.
Petitioners seek to distinguish Curtis v. Commissioner,supra, and Doyle v. Commissioner,supra, each of which affirmed a Tax Court holding for respondent. We agree that petitioners in the instant case have a much stronger argument than the taxpayers in Curtis and Doyle; *553 however, petitioners' argument is not strong enough. In Wallace v. Commissioner,supra, revg. an unreported Memorandum Opinion of this Court, the Court of Appeals for the Ninth Circuit held that the taxpayer-wife's home was her residence in San Francisco, California, and that she was away from home, within the meaning of the predecessor of section 162(a)(2), during the six-month period when she was in Hollywood, California, to make a movie. In Wallace, the taxpayer's employment lasted six months and was pursuant to a contract which was to, and did, expire at the end of the six months. In the instant case, Faircloth's employment lasted 14 months and the record does not disclose any information from which we could conclude that Faircloth knew when it was going to terminate. We conclude that, apart from the legal question of the meaning of the statute, petitioners' case is far weaker than Wallace's and that this difference is critical. We have no basis for criticizing petitioners' decisions as to where they should live and where Faircloth should work. These decisions were affected by both business and nonbusiness considerations. Petitioners have failed to show that the business *554 considerations are sufficiently overwhelming to allow us to uphold their claimed deductions. We hold for respondent.
To take account of respondent's concession on another matter, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.
2. Petitioners have pointed to nothing in the record that reconciles the stipulated round-trip distance of 316 miles and tolls of $ 1 with the amounts claimed on their 1978 tax return on account of Faircloth's round trips.↩
3. The term "commuting" is little more than a shorthand for "nondeductible"; especially in the context of the way the parties herein have framed the issue, "commuting" is a label that does not appreciably advance the logical analysis of the situation. See United States v. Tauferner,407 F.2d 243, 245↩ (CA10 1969).
4. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
6. Patrick v. Commissioner,T.C. Memo. 1977-153; Babeaux v. Commissioner,T.C. Memo. 1977-154; Waldrop v. Commissioner,T.C. Memo. 1977-190↩.
7. T.C. Memo. 1980-147↩.