Dale W. FOLKMAN and Judy A. Folkman, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Denis E. DEHNE and Connie S. Dehne, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. Nos. R–74–122 BRT, R–74–121 BRT.

United States District Court, D. Nevada.

June 24, 1977.

Ernest J. Maupin, III, Walther, Key & Maupin, Reno, Nev., for plaintiffs.

Yale S. Goldberg, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., Lawrence J. Semenza, U. S. Atty., Reno, Nev., for defendant.

## OPINION

BRUCE R. THOMPSON, District Judge.

These are civil actions brought by plaintiffs Dale W. Folkman, Judy A. Folkman, Denis E. Dehne, and Connie S. Dehne against the United States for refunds of alleged overpayments of federal income taxes, together with statutory interest paid for the years 1971 and 1972. The plaintiffs will hereinafter be referred to as "Folkman" and "Dehne"; their wives are parties solely because they filed joint income tax returns with the plaintiffs.

For the calendar years in question, plaintiffs Folkman and Dehne timely filed joint income tax returns and paid in full the respective tax liabilities. Following individual audits of plaintiffs' income tax returns, the Internal Revenue Service assessed additional taxes in the following amounts:

|      | Folkman  | Dehne    |
| ---- | -------- | -------- |
| 1971 | $320.00  | $447.43  |
| 1972 | $374.84  | $516.10  |

These deficiencies were subsequently paid in full.

Thereupon, both Folkman and Dehne submitted to the Internal Revenue Service claims for refunds with respect to the tax assessments made for the calendar years 1971 and 1972. These claims were subsequently disallowed and these actions were timely filed on August 20, 1974.

## FACTS

The pertinent facts have been stipulated and are not in dispute.

Plaintiff Folkman became employed by Pan American World Airways, Inc. (Pan Am) in January of 1966. As a result of low seniority, Folkman experienced difficulty in maintaining his proficiency as a pilot due to the marginal hours he was allowed to fly.

In order that all pilots maintain a proficiency in basic piloting skills, Pan Am encouraged its pilots to participate in several volunteer pilot training activities. In addition, Pan Am's pilots were also encouraged to fly for the military reserve to the extent that such activities did not interfere with the commitment of time necessary to satisfy the conditions of airman employment with Pan Am.

Although Pan Am's volunteer programs were sufficient to satisfy the minimum proficiency standards required by Pan Am, Folkman joined the Nevada Air National Guard in October, 1966. At the time that Folkman joined the Nevada Air National Guard, he was required as a condition of membership to reside in the Reno, Nevada area. As a result, Folkman moved his family to Reno in August, 1966. Prior to this time the Folkmans had resided in San Bruno, California.

From the beginning of his employment with Pan Am, up to and including the calendar years 1971 and 1972, Folkman's principal post of duty was at Pan Am's airline base located in San Francisco, California. At all times, including the pertinent taxable

years in question, Folkman's principal post of duty while employed by the Nevada Air National Guard, was in Reno, Nevada.

The time spent by Folkman at each of the respective posts of duty varied slightly from month to month during the taxable years in question. During an average month, plaintiff Folkman would be away from his residence in Reno approximately ten to thirteen days while performing services for Pan Am. Folkman's responsibilities with the Air National Guard usually required him to fly between four and seven days a month. Generally, Folkman was able to select the days he wanted to fly for the National Guard in order to accommodate his Pan Am schedule.

For the taxable year 1971, Folkman reported that he was away from his home in Reno approximately 155 days, 104 of which represented days Folkman rendered services for Pan Am. During that same year, Folkman rendered compensable services for the Nevada Air National Guard on 85 days. In 1972, Folkman spent nearly 124 days away from his family in Reno. Eighty of these 124 days were spent rendering services for Pan Am. Folkman, during that same taxable year, 1972, performed services for the Nevada Air National Guard on 76 days.

During 1971 and 1972, Folkman earned $27,444.69 and $27,890.16, respectively, while in the employ of Pan Am. As a pilot for the Nevada Air National Guard, Folkman earned $4,300.10 and $4,612.39, respectively, during the taxable years in question.

After each and every trip in which Folkman performed services for Pan Am, he would return immediately to his family residence in Reno, Nevada.

On his Federal Income Tax Returns for 1971 and 1972, Folkman deducted his transportation expenses to and from his post of duty with Pan Am and his meals and lodging expenses on the days he performed compensable services with the Nevada Air National Guard. These deductions were disallowed by the Internal Revenue Service who determined that Folkman's primary motive for returning to Reno was personal in na-

ture (i. e., to be with his family, and not to fly for the Nevada Air National Guard). The meals and lodging expense deductions were similarly disallowed because they were not incurred while Folkman was "away from home" and therefore not deductible as travel expenses.

Plaintiff Dehne's claims are based on substantially similar circumstances. In July, 1967, Dehne began working for Pan Am and was assigned to the airline base in San Francisco, California. Dehne's principal post of duty while employed with Pan Am was in San Francisco through the 1970 calendar year. Thereafter, Dehne was assigned to the Pan Am airline base at Kennedy Airport, New York City, New York. New York City remained Dehne's principal post of duty up to and including the taxable years in question.

In December, 1967, Dehne joined the Nevada Air National Guard as a pilot for virtually the same reasons that had prompted Folkman to join. As a result of the requirement that all Nevada Air National Guard pilots maintain their personal residence in the Reno, Nevada area, Dehne moved his family to Reno in October, 1967. Thereafter, and including the taxable years in question, Dehne's principal post of duty while a member of the Nevada Air National Guard, was Reno, Nevada.

In 1971, Dehne was away from his personal residence in Reno, Nevada for approximately 194 days, of which 164 were spent performing services for Pan Am. During that same year, Dehne rendered compensable services on 65 days to the Nevada Air National Guard. Dehne spent 121 days away from his residence in Reno in 1972. On 102 of these days, Dehne actually performed services for Pan Am. For both taxable years in question, Dehne was reimbursed by Pan Am for meals, laundry and tips on an hourly basis while he was away from Reno on trips. When Dehne was not performing services for Pan Am and not in the process of traveling to and from New York City, he was residing with his family in Reno, Nevada. On 78 of these days, in 1972, Dehne performed compensable serv-

ices to the Nevada Air National Guard. As with Folkman, Dehne was also allowed to choose the days he wished to fly for the Nevada Guard to coordinate with his Pan Am duties in New York City. In 1971 and 1972, Dehne received compensation from Pan Am in the amounts of $20,508 and $23,408, respectively. As a pilot for the Nevada Air National Guard, Dehne received $3,479 and $4,300, respectively, for the taxable years in question.

Dehne also deducted his transportation expenses between his residence in Reno and his principal post of duty in New York on his 1971 and 1972 Federal Income Tax Returns. Dehne also deducted an aliquot portion of his living expenses incurred by him at Reno while away from his post of duty with Pan Am in New York City during 1971 and 1972.

The issues to be determined by this Court have been set forth in the Pre-trial orders and are as follows:

1. Whether, and to what extent, Folkman and Dehne are entitled to deduct the costs of traveling between their personal residences in Reno, Nevada and their principal posts of duty with Pan American Airways.

2. Whether, and to what extent, Folkman and Dehne are entitled to deduct their cost of meals and lodging on the various days they performed duties for the Nevada Air National Guard.

3. Whether, and to what extent, Folkman and Dehne are entitled to deduct their unreimbursed costs of meals and lodging on those days immediately before and after completing services at their principal post of duty with Pan Am.

4. Whether Reno, Nevada or their principal post of duty with Pan American Airways is their "tax home" for federal income tax purposes during the years 1971 and 1972.

The sole issue of law to be determined as set forth in the stipulated Pre-trial orders is:

"The only issue of law to be tried and determined upon trial is whether all or any part of the transportation and meals and lodging expenses described above constitute deductible trade or business expenses under Section 162 of the Internal Revenue Code, deductible expenses paid or incurred for the production or collection of income under Section 212 of the Internal Revenue Code, or nondeductible personal, living, or family expenses under Section 262 of the Internal Revenue Code."

## I

## TAX HOME

Section 162(a)(2) of the Internal Revenue Code (26 U.S.C. § 162(a)(2)) provides:

"Trade or business expenses

(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; . ."

By the express wording of section 162(a)(2), traveling expenses, to be deductible, must be incurred "while away from home." *Commissioner of Internal Revenue v. Flowers*, 326 U.S. 465, 470, 66 S.Ct. 250, 90 L.Ed. 203 (1946).

The United States Supreme Court has avoided any definitive interpretation of the word "home" as it appears in its statutory context. It has been repeatedly held, however, by various circuits, the Tax Court, and the Internal Revenue Service, that, for purposes of section 162(a)(2), a taxpayer's "home" is his abode at his principal place of business. See *Curtis v. Commissioner of Internal Revenue*, 449 F.2d 225, 227 (5th Cir. 1971); *Tucker v. Commissioner of Internal Revenue*, 55 T.C. 783 (1971); Rev. Rul. 75-432.

Although the Ninth Circuit has tacitly agreed with this interpretation, *Wills v.*

*Commissioner of Internal Revenue,* 411 F.2d 537, 540 (9th Cir. 1969); *Smith v. Warren,* 388 F.2d 671, 673 (9th Cir. 1968); *Wright v. Hartsell,* 305 F.2d 221 (9th Cir. 1962), it has not strictly adhered to its premise. See, *Wallace v. Commissioner of Internal Revenue,* 144 F.2d 407, 410 (9th Cir. 1944). In *Wallace,* the court emphasized that the term "home" was to be understood and applied in its ordinary sense (i. e., taxpayer's residence), and was not to be necessarily construed as meaning the taxpayer's place of business or employment. Regardless of the viability of *Wallace* in this Circuit, it should not be confused with those cases where the taxpayer has two or more occupations at different locations. Where a taxpayer has two occupations, or is carrying on a single occupation at two continuing posts of duty, which require him to spend a substantial amount of time in each of two cities, his "home" has usually been held to be at his principal place of business. *Markey v. Commissioner of Internal Revenue,* 490 F.2d 1249, 1253 (6th Cir. 1974); *cf. Wills v. Commissioner of Internal Revenue,* supra; *Smith v. Warren,* supra; Rev. Rul. 75–432.

Which location constitutes the taxpayer's tax home is essentially a question of fact. *Curtis v. Commissioner of Internal Revenue,* supra, at 227; *cf., Wills v. Commissioner of Internal Revenue,* supra, at 540; Rev. Rul. 75–432; Rev. Rul. 63–82; Rev. Rul. 61–67. In *Markey v. Commissioner of Internal Revenue,* supra, the Sixth Circuit established a three-prong test that is helpful in determining whether Reno or the plaintiffs' principal posts of duty with Pan Am is their principal place of business and therefore their tax home. The relevant factors are (1) the length of time that each taxpayer spent in Reno and their principal posts of duty with Pan Am; (2) the degree of taxpayers' business activity in each place; and (3) the relative proportion of taxpayers' income derived from each place. *Markey v. Commissioner of Internal Revenue,* supra, at 1252; see also, Rev. Rul. 63–82; Rev. Rul. 61–67.

During each of the taxable years in question, the actual days Folkman and Dehne performed services for Pan Am exceeded those days they performed compensable services for the Nevada Air National Guard.

|        |        | 1971 | 1972 |
|--------|--------|------|------|
| Folkman | Pan Am | 134 days | 101 days |
|        | NANG | 66 days | 61 days |
| Dehne | Pan Am | 164 days | 102 days |
|        | NANG | 65 days | 78 days |

As to the compensation received by Folkman and Dehne for their services for Pan Am and the Nevada Air National Guard, the disparity is even greater.

|        |        | 1971 | 1972 |
|--------|--------|------|------|
| Folkman | Pan Am | $27,445 | $27,890 |
|        | NANG | 4,300 | 4,612 |
| Dehne | Pan Am | $20,508 | $23,408 |
|        | NANG | 3,479 | 4,300 |

The position of the government in these cases is that under applicable precedents, some of which have been cited, supra, the taxpayers' tax home must be found to be their principal posts of duty with Pan Am, that travel expense to the principal post of duty is a non-deductible "commuter's" expense, and that the return trip to Reno, Nevada is likewise a non-deductible expense because it was incurred primarily for the personal convenience of the taxpayer so that he could be with his family, and not for business reasons. This analysis, while gaining support from various reported decisions, markedly *John L. Dean,* P–H Memo # 76,379 TC, December 18, 1976, and *J. Paul and Patricia A. Presault,* P–H Memo # 75,146, May 15, 1975, is not appealing in the circumstances of the cases at bar.

As stated in the Pre-trial order, these cases involve the interaction of certain provisions of the Internal Revenue Code. The section to which primary reference has been made is 26 U.S.C. § 162(a)(2) quoted supra. Also involved are 26 U.S.C. § 212(1):

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income;"

and 26 U.S.C. § 262:

"Except as otherwise expressly provided in this chapter, no deduction shall be

allowed for personal, living, or family expenses."

The situation must also be viewed in the light of the established rule that "the taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses." Regs. § 1.262–1(b)(5). *Commissioner of Internal Revenue v. Flowers*, supra.

■ In considering all these statutes and regulations in pari materia, it seems apparent to the writer that Congress intended that travel expense necessarily incurred by the taxpayer in carrying on any trade or business (section 162) or for the production of income (section 212) should be deductible. They are a justifiable offset against the taxable income generated by the taxpayer's activities. Many tax cases have recognized the deductibility of travel expense incurred for the production or collection of income— without reliance on section 162. *Harry Kanelos*, T–C Memo Op. Dkt. 112053 (1943), *R. C. Coffey*, 1 T.C. 579 (1943); *E. M. Godson*, T–C Memo Op. Dkt. 4913 (1946); *Dezso Goldner*, 27 T.C. 455 (1956). The regulations (1.212–1) do not expressly disallow ordinary and necessary travel expense incurred for the production of income, except to outlaw "commuter's expenses."

The government's reasoning, it seems to me, leads to a shocking result. These two taxpayers have substantial income producing employments in two different cities. Although the Pan Am employment produces substantially more income than the Nevada Air National Guard jobs, neither can be classified as de minimis. There is no indication and no contention that either taxpayer had obtained two jobs for the purpose of defrauding the revenue or acquiring any advantage under the Internal Revenue Code to which he would not otherwise be entitled. Travel between the two places of employment is absolutely essential to the earning of taxable income and is prima facie deductible under the governing statutes. From this point of view it doesn't make any difference where the taxpayer's so-called "tax home" is found to be situated.

The government's position is predicated on a legal fiction, that is, that "away from home" in section 162, means away from tax home, a concept that has not been approved by the Supreme Court. See, *Commissioner of Internal Revenue v. Flowers*, supra. By designating the places of employment with Pan Am as the "tax home", the government then indulges in another fiction, that is, that travel from New York or San Francisco to Reno is simply a commuter's expense and non-deductible, disregarding the admitted fact that each taxpayer had to be in Reno at one time or another to fulfill his employment obligations with the National Guard.

■ The plain sense of the situation is that section 162 was not drafted and enacted by Congress with these peculiar fact circumstances in mind. In its language and concept, section 162 was intended to apply to the average taxpayer who has one home near his principal place of business and travels for business purposes elsewhere on temporary sojourns away from home. Section 162 is not necessarily the basis for allowability of travel deductions for a taxpayer who has two substantial employments at separated locations. No case authority has been cited or found involving the facts here present. The Tax Court opinion in *John L. Dean*, supra, is closest in point. There the taxpayer lived in Kansas City, Missouri where he earned approximately $3,000 in 1970 as an officer in the Air Force Reserve. In 1971, his income from this source was de minimis. His principal employment was as a pilot for TWA flying out of New York. The disallowance of claimed travel expense was dictated by express findings demonstrated in the following excerpt from the Tax Court opinion:

"Thus, the ultimate question in the instant case is whether petitioner's travel between Kansas City and New York City was motivated by business considerations. We find that petitioner did not travel between Kansas City and New York City for business reasons. Petitioner traveled because of his personal desire to reside in

Kansas City. Therefore, petitioner's air fare is a nondeductible commuting expense. *Compare Matteson v. Commissioner*, 514 F.2d 43 [35 AFTR 2d 75–1121] (8th Cir. 1975), affg. per curiam a Memorandum Opinion of this Court; with Arthur C. Puckett, Jr., supra.

"This finding is necessitated by the circumstances surrounding petitioner's employment in the Air Force Reserve. Petitioner did not travel to Kansas City solely to serve in his reserve unit. Rather, the location of his reserve unit assignment was incidental to his selection of the locality for his personal residence. Cf. *Mazzotta* [*Julio S. Mazzotta*, 57 T.C. 427, 429 (1971)]. There has been no showing that it was necessary for petitioner to be assigned to a reserve unit in Kansas City. When petitioner first moved to Kansas City from New Orleans he successfully, albeit with some difficulty, transferred to a reserve unit closer to his new residence. Apparently, petitioner has made no effort to transfer to a reserve unit in the New York City area. Apart from petitioner's selection of Kansas City for personal reasons as his residence, we conclude that petitioner would not have incurred substantial travel expense which he may have avoided by seeking to transfer reserve units."

The contrast with the facts of the cases at bar is patent. Here the taxpayers are required to maintain their residences in Reno, Nevada in order to retain a job which produces substantial income. This job is of a kind which enhances the taxpayer's proficiency in his principal occupation. These circumstances, and other facts hereinbefore noted, support the following findings by this Court:

1. Both Folkman and Dehne moved to Reno, Nevada because they were required to do so in order to obtain and retain employment as pilots with the Nevada Air National Guard.

2. Residences in Reno, Nevada were established for sound business reasons and were not dictated by personal desire or fancy.

3. The employment with Nevada Air National Guard was lucrative and resulted in the production of a substantial portion of each taxpayer's income. The responsibilities and duties of the positions as pilots for the Nevada Air National Guard required each taxpayer to be personally present in Reno, Nevada for a good many days of each of the taxable years in question to produce this income.

4. The travel expenses incurred between Reno, Nevada and the taxpayers' principal duty stations were ordinary and necessary expenses incurred for the production of income, irrespective of where their "tax homes" may properly be found to be located under section 162.

5. The "tax home" of each of these taxpayers was and is in Reno, Nevada. Under the related facts, the places of principal employment, that is, the duty stations with Pan Am, is not the controlling factor in the determination of "tax home."

## II

## MEALS AND LODGING

The second and third issues of fact in the Pre-trial orders relate to the deductibility by the taxpayers of meals and lodging expenses while away from home.

Section 262 of the Internal Revenue Code expressly precludes the deduction of personal, living or family expenses. I would favor a conclusion that when a taxpayer, as in these cases, chooses to maintain two places of employment, widely separated, which require him to live at two different places to fulfill the duties of his two jobs, his subsistence expenses at each location are personal, living or family expenses which are non-deductible under section 262. I would prefer to hold that a taxpayer cannot create a tax deduction for himself by maintaining permanent residences at two or more places. This is true whether the residences are hotel rooms, apartments or owned houses. Section 162 (which expressly includes as traveling expenses amounts expended for meals and lodging) is inapplicable to such a

situation because, as hereinabove noted, it is intended to govern allowable deductions with respect to temporary absences from a permanent home.

The foregoing analysis is conceptually supported by the opinion in *James v. United States*, 308 F.2d 204 (9th Cir. 1962). There the taxpayer claiming deductions for food and lodging was constantly in travel status. He had no permanent home, although his domicile was clearly in Reno, Nevada. The deduction was disallowed because there was no duplication of living expenses. By parity of reasoning, if the taxpayer elects to maintain two residences or homes, that is, places where he is required to be in order to fulfill the duties of permanent jobs in each place, there is no duplication of expenses and no deduction for food and lodging.

█ Despite my personal predilections, as noted, in view of the finding that the taxpayers' tax homes were in Reno, Nevada, controlling precedent requires the allowance of meals and lodging expenses under section 162. The alternative would be to hold that the phrase "away from home" contemplates that a taxpayer can, in fact, have more than one "home" to be away from. This would not be clearly a senseless interpretation, but controlling authority has not endorsed this concept.

In 1951, the Tax Court in a case (*Joseph H. Sherman, Jr.*, 16 T.C. 332), which involved a taxpayer operating substantial income producing businesses in two cities said:

"This court has heretofore recognized that a taxpayer may have more than one occupation or business, and has held that where it is shown that a taxpayer has two occupations which require him to spend a substantial amount of time in each of two cities, he is entitled to the deduction of travelling and other ordinary and necessary business expenses incurred in connection with attendance upon the one removed from his residence (citing cases)."

See also: *William L. Heuer Jr.*, 1959, 32 T.C. 947, aff. (5th Cir. 1960), 283 F.2d 865; *Chandler v. Commissioner of Internal Revenue*, 226 F.2d 467 (1st Cir. 1955).

The controlling decisions in *U. S. v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967) and *Sanders v. C.I.R.*, 439 F.2d 296 (9th Cir. 1971), teach that in this difficult area of deductibility of food and lodging as business expenses, logic must give way to reasonable certainty in the administration of the tax laws and regulations. See also, *Steinhort v. C.I.R.*, 335 F.2d 496 (5th Cir. 1964). Thus *Correll*, supra, sustained the validity of the Commissioner's sleep and rest rule for purely practical reasons, and said:

"In resolving that problem, the Commissioner has avoided the wasteful litigation and continuing uncertainty that would inevitably accompany any purely case-by-case approach to the question of whether a particular taxpayer was 'away from home' on a particular day. Rather than requiring 'every meal-purchasing taxpayer to take pot luck in the courts,' the Commissioner has consistently construed travel 'away from home' to exclude all trips requiring neither sleep nor rest, regardless of how many cities a given trip may have touched, how many miles it may have covered, or how many hours it may have consumed. By so interpreting the statutory phrase, the Commissioner has achieved not only ease and certainty of application but also substantial fairness, for the sleep or rest rule places all one-day travelers on a similar tax footing, rather than discriminating against intracity travelers and commuters, who of course cannot deduct the cost of the meals they eat on the road. See *Commissioner v. Flowers*, supra."

The statute, I.R.C. section 162 allows a deduction for travel expenses (including meals and lodging) when away from home, overnight (*Correll*, supra). These taxpayers incurred such expenses in San Francisco and New York, respectively, as ordinary and necessary expenses incurred in carrying on a trade or business. They are deductible, irrespective of what this Court might see as a fairer result in the circumstances of these particular cases.

Other issues have been asserted and briefed by the parties, for example, the government argues that taxpayers cannot here assert claims for relief not stated as a basis for relief in their claims for refund, and plaintiff Dehne cannot obtain in this action a deduction for certain telephone expenses. These, and any similar issues, will not be entertained by the Court. Pre-trial orders, which supersede the pleadings, were carefully prepared in both cases and were approved by the parties and the Court. They succinctly define the issues of fact to be tried and the issue of law to be determined. All other matters are extraneous.

In consideration of the premises stated, it is our conclusion that plaintiffs Folkman and Dehne are entitled to a deduction for the tax years in question of their expenses of travel between Reno, Nevada and their respective posts of duty with Pan Am, and for their proved expenses for meals and lodging while away on business from their tax homes in Reno.

In the present cases, however, the food and lodging expenses have not been proved by competent evidence and business records. They are, therefore, not allowable for the tax years in question.

Accordingly,

*IT HEREBY IS ORDERED* that within thirty days from date counsel will stipulate the amounts of tax refunds due consistent with the foregoing opinion and counsel for plaintiffs will submit a form of judgment in each case conformably with the stipulation.